# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. H-07-155 |
| | § | |
| MAZEN ABDALLAH, | § | |
| WESAM ABDALLAH. | § | |

## MEMORANDUM AND OPINION

Defendants Mazen Abdallah and Wesam Abdallah have asked this court for a severance on the grounds that joinder of all the defendants was improper, that the complexity of the trial and the risk of spillover effect of Rule 404(b) evidence would unfairly prejudice them, and that they and their codefendants, Ayad Fallah, Murad Almasri, and Raed Almasri, have irreconcilable and antagonistic defenses. (Docket Entry No. 81). The government has responded. (Docket Entry No. 109). A superseding indictment was issued on October 15, 2007. (Docket Entry No. 126). The Abdallahs filed a supplemental motion to sever. (Docket Entry No. 142).

Based on the motions and response, the record, and the applicable law, the Abdallahs' motion to sever is denied. The reasons for this ruling are set out in detail below.

**I.   Background**

This is a healthcare case that has been designated complex. It is scheduled to begin trial in January 2008.

The indictment alleges that in 2002, Fallah, Almasri, and Elmasri became the owners and operators of Americare Medical Service ("Americare"), a Houston company that transported Medicare and Medicaid dialysis patients to and from their dialysis treatments. Americare is licensed in Texas as an Emergency Medical Service Provider and has a City of Houston Ambulance Service Permit and a Medicare provider number. In June 2006, Mazen Abdallah and Will Smith purchased Americare from Fallah, Almasri, and Elmasri. Mazen Abdallah and Wesam Abdallah operated Americare after June 2006.

Medicare and Medicaid pay a portion of claims submitted by healthcare providers such as Americare for ambulance transport of dialysis patients, but only under certain conditions. An approved supplier of ambulance services must provide the transportation, and the transportation must be medically necessary and reasonable for the condition of the patient. In addition, the patient must be "bed confined"—unable to walk, sit in a chair or wheelchair, or get up from bed without assistance—or otherwise unable to use other means of transportation. The defendants are charged with conspiracy to violate the healthcare fraud statute by submitting fraudulent claims for ambulance transportation provided by Americare.

The Abdallahs have moved to sever the allegations against them from the allegations against Fallah, Almasri, and Elmasri, the former owners of America.[1] (Docket Entry No. 81).

---

[1] The Abdallahs also filed a supplemental motion to sever in which they note that under Texas law, "liabilities associated with an acquired business ordinarily are not assumed as a result of asset only acquisitions." (Docket Entry No. 142 at 2). The Abdallahs argue that because Abdallah & Smith, L.L.P. "legally cannot be held liable for the four years of pre-acquisition Medicare overpayment liabilities related to Americare . . . then clearly the Abdallahs cannot *derivatively* be made responsible for their codefendants' pre-June 2006 conduct related to Medicare/Medicaid

The Abdallahs argue that the original indictment failed to allege an overarching conspiracy between themselves and Fallah, Almasri, and Elmasri, such that joinder of all the defendants is improper. They also argue that they were themselves defrauded by Fallah, Almasri, and Elmasri, who withheld information about Americare's fraudulent billing practices when the Abdallahs purchased Americare. The United States argues in response that severance is unnecessary because the indictment shows that the Abdallahs knew of the fraudulent activity when they purchased Americare and that they participated in the fraud both before and after purchasing the company.

## II.     The Legal Standard

Defendants named in the same indictment should generally be tried together, particularly when they are allegedly members of a conspiracy. *United States v. Booker*, 334 F.3d 406, 416 (5th Cir. 2003) (citing *United States v. Manges*, 110 F.3d 1162, 1174 (5th Cir. 1997). However, if the joinder of offenses or defendants in an indictment appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide other relief. Fed. R. Crim. P. 14(a).

Defendants named in a single indictment face a heavy burden in demonstrating to a district court that antagonistic defenses warrant granting a severance. *United States v. Clay*, 408 F.3d 214, 219 (5th Cir. 2005) (quoting *United States v. Daniels*, 281 F.3d 168, 177 (5th

---

fraud." (Docket Entry No. 142 at 6). However, the Abdallahs have failed to show that federal criminal liability is coextensive with state civil liability. The supplemental motion to sever is denied.

Cir. 2002). The United States Supreme Court has declined to mandate severance solely because codefendants have conflicting defenses. *See Zafiro v. United States*, 506 U.S. 534, 538–39 (1993); *see also Brown v. Dretke*, 419 F.3d 365, 372 (5th Cir. 2005). The mere fact that codefendants blame one another is not a sufficient reason for severance. *Zafiro*, 506 U.S. at 538. Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The defendant seeking severance must show that the defenses are "so diametrically opposed that the jury, in order to believe the core testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." *Daniels*, 281 F.3d at 177 (internal quotations and citation omitted). The conflict must concern the core or essence of a defense, not merely minor or peripheral matters. *Id.* Even when such a conflict is present to an extent that risks prejudice, the district court should take into account the public interests in judicial economy and the administration of justice served by joint trials and the possibility that limiting instructions or other less drastic measures will suffice to cure the risk. *Id.*; *see also Zafiro*, 506 U.S. at 539. The defendant must show that prejudice exists and can only be remedied by severance. *Zafiro*, 506 U.S. at 539.

### III.   Analysis

The Abdallahs assert that the indictment, evaluated as a whole, concerns "three distinct schemes." One scheme involves Fallah, Almasri, and Elmasri and began in 2002 and continued beyond 2006 when they sold Americare to the Abdallahs and Will Smith. Another

scheme involves the Abdallahs after they acquired Americare. A third money laundering scheme is alleged among all the defendants except Wesam Abdallah. (Docket Entry No. 81 at 4). The Abdallahs contend that the language of the indictment indicates that the grand jury considered the first scheme to be distinct from the second because the counts focus on conduct by Fallah, Almasri, and Elmasri separately from conduct by the Abdallahs. The Abdallahs argue that the indictment is facially deficient because the indictment "groups many counts and allegations that are not adequately related." (Docket Entry No. 81 at 9). They contend that because the three alleged schemes are separate and distinct, the facts underlying each scheme and the related offenses are not sufficiently connected to make joinder proper. Alternatively, the Abdallahs contend that even if joinder is proper, severance is necessary because the trial's complexity will increase the risk of prejudice to them. They contend that "it is unlikely that a jury can easily separate the government's complicated cases against each defendant even with the normal instructions that can be provided." (Docket Entry No. 81 at 10). They also argue that Rule 404(b) evidence that the government intends to introduce as to Fallah, Almasri, and Elmasri creates an additional risk of spillover prejudice that warrants severance. Arguing that the indictment fails to allege an "overarching conspiratorial agreement among all defendants," (*id.* at 5), the Abdallahs assert that the improper joinder of the defendants under one indictment, combined with the complexity of the case, will result in unfair prejudice.

In addition, the Abdallahs contend that their defense is irreconcilably antagonistic to the defense of Fallah, Almasri, and Elmasri. The Abdallahs intend to take the position at trial

that when they purchased Americare in 2006, they were defrauded by the sellers, Fallah, Almasri, and Elmasri. The Abdallahs assert that "[i]n order to believe that the Abdallahs weren't defrauded by their codefendants, as they will contend they were, a jury must believe the Almasri group *and* reject the Abdallahs' defense." (Docket Entry No. 13).

The United States responds that joinder of the defendants was proper and that the indictment – particularly the superceding indictment – sufficiently alleges that the Abdallahs participated in an overarching conspiracy with the Almasri defendants. The United States asserts that evidence shows that the Abdallahs participated in Americare's fraudulent activity before and after purchasing the company, recruiting dialysis patients to ride with Americare who did not meet the medical necessity requirements for ambulance transportation. Although not all the defendants are listed in all the counts, the United States notes that "all defendants need not be charged in each count" under Federal Rule of Criminal Procedure 8(b) and that the indictment alleges that all the defendants knew that their conduct was fraudulent throughout the relevant period. (Docket Entry No. 109 at 9). The United States contends that the Abdallahs have not sufficiently articulated specific instances of prejudice based on antagonistic defenses or spillover effects of Rule 404(b) evidence introduced against other defendants, and that any such prejudice can cured by cautionary jury instructions.

The Abdallahs' argument that joinder was improper is not persuasive. "Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder." *United States v. Bullock*, 71 F.3d 171, 175 (5th Cir. 1995). Under Rule 8,

joinder is appropriate if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Although Fallah, Almasri, and Elmasri were responsible for setting up Americare and operating it initially, the superseding indictment alleges the Abdallahs' involvement in the business before and after their purchased the company. The superseding indictment alleges one conspiracy involving all five defendants, rather than three separate schemes, as the Abdallahs argue. The indictment alleges that Fallah, Almasri, and the Abdallahs solicited dialysis patients for ambulance transportation by Americare in exchange for different forms of compensation to the patients, including cash, gift cards, and monthly payments. (Docket Entry No. 195 at 8). The indictment also alleges that the Abdallahs participated in Americare's fraudulent activities before purchasing the company, soliciting ineligible patients for ambulance transport and paying to obtain their participation, and that they continued the fraudulent activities by making payments to some Americare patients after taking over the company's day-to-day operations. (*Id.* at 9). The indictment alleges that all five defendants presented false prescriptions to nursing-home staff to obtain staff physicians' signatures for the ambulance transportation of dialysis patients who did not qualify for such transportation. The Abdallahs have not shown that the indictment does not present a basis for proper joinder under Rule 8.

The Abdallahs' arguments regarding unfair prejudice due to the complexity of the trial and the effect of spillover evidence is similarly unpersuasive. A general description of complexity is not enough to show "specific and compelling prejudice" necessary for

severance. *U.S. v. Booker*, 334 F.3d 406, 415 (5th Cir. 2003). There are five defendants and thirty-eight counts. The Fifth Circuit has found limiting instructions to the jury sufficient to protect defendants' trial rights in cases of similar or "much greater magnitude and complexity," upholding denials of motions to sever. *United States v. Bribiesca*, 189 F.3d 467, at *4 (5th Cir. 1999) (44 counts; 4 defendants); *see also United States v. Solis*, 299 F.3d 420, 441 (5th Cir. 2002) (36 counts; 11 defendants at trial); *United States v. Posada-Rios*, 158 F.3d 832, 865 (5th Cir. 1998) (52 counts; 35 defendants; 134-page superseding indictment); *United States v. Philips*, 664 F.2d 971, 1016–17 (5th Cir. 1981) (36 counts; 100-page indictment; 12 defendants); *United States v. Martino*, 648 F.2d 367, 385–86 (5th Cir. 1981) (35 counts, 20 defendants; over 200 witnesses). In addition, a spillover effect, by itself, is an insufficient predicate for a motion to sever. *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002); *see also United States v. Lewis*, 476 F.3d 369, 384 (5th Cir. 2007). Juries are presumed to follow instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and the Fifth Circuit has held that limiting instructions can adequately cure the risk of prejudice resulting from evidence introduced against codefendants. *See, e.g.*, *Lewis*, 476 F.3d at 384; *United States v. Peterson*, 244 F.3d 385, 393 (5th Cir. 2001); *United States v. Scott*, 795 F.2d 1245, 1250 (5th Cir. 1986) ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."). Severance is required on the basis of spillover effect only in the most extreme cases. *United States v. Rocha*, 916 F.2d 219, 228–29 (5th Cir. 1990). The Abdallahs' argument that this

case presents such extreme circumstances as to warrant severance is not persuasive. They have not shown that a properly instructed jury will not be able to make a fair determination of their guilt or innocence unless the allegations against them are severed for separate trial. The Abdallahs have failed to establish that a joint trial will prejudice them to such an extent that this court cannot provide adequate protection or that any prejudice outweighs the government's interest in economy of judicial administration. *See Solis*, 299 F.3d at 440.

The Abdallahs' argument that severance is required because their defense is irreconcilably antagonistic to that of Fallah, Almasri, and Elmasri also fails. Severance is warranted if codefendants' defenses are antagonistic, but only if the antagonism is to the point of being "irreconcilable and mutually exclusive." *United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir. 1981). Defenses are "mutually exclusive" when the "essence or core of the defenses" is in conflict, "such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *Id.* at 1134; *see also United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002); *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir. 1984).

All the defendants are charged with conspiracy and healthcare fraud. Several defendants are also charged with money laundering and with violating the antikickback provisions of 42 U.S.C. § 1320a-7b(b)(2)(A). The Abdallahs assert that at trial, they will argue that they were defrauded by Fallah, Almasri, and Elmasri, who withheld material information about Americare and its contractors when the Abdallahs purchased the company in an arms-length transaction in 2006. The Abdallahs contend that this defense is

9

irreconcilably antagonistic to the Almasri group's defense because "in order to believe that the Abdallahs weren't defrauded by their codefendants, the jury must believe the Almasri group *and* reject the Abdallahs' defense." (Docket Entry No. 81). This argument relies on an overly generous characterization of the "core" of the Almasri group's defense. *See Romanello*, 726 F.2d at 177. The Abdallahs intend to defend on the basis that the Almasri group withheld information about Americare's fraudulent activities before the 2006 purchase of the company. But the "essence or core" of the Almasri group's defense is that there was no fraudulent activity in the first place. Although the defenses may be inconsistent, they are not irreconcilable and mutually exclusive; the jury could believe the core testimony offered on behalf of the Abdallahs – they did not know and were not told of fraudulent activities when they purchased the company in 2006 – and also believe the core testimony offered on behalf of their codefendants – there was no fraudulent activity to disclose – and vice-versa. *See Daniels*, 281 F.3d at 177. The Abdallahs have failed to show that their defense is so irreconcilably antagonistic to the defense of Fallah, Almasri, and Elmasri that severance is warranted.

### III. Conclusion

The Abdallahs' motion to sever is denied.

SIGNED on November 5, 2007, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge