**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. H-07-155 |
| § | |
| MAZEN ABDALLAH, § | |
| WESAM ABDALLAH. § | |

**ORDER DENYING MOTION FOR RECONSIDERATION**

Defendant Mazen Abdallah moves for reconsideration of this court's order denying his motion to suppress evidence seized from his home and business. Abdallah asks this court to reconsider its finding that the affidavit submitted with the government's application for a search warrant was sufficient to support probable cause. (Docket Entry No. 180). Abdallah has also filed a supplemental motion for reconsideration. (Docket Entry No. 185). Based on a careful review of the motion, the record, and the applicable law, this court denies Abdallah's motion and supplemental motion for reconsideration. The reasons for this ruling are set out in detail below.

**I.     Background**

The indictment alleges that in 2002, Ayad Fallah, Murad Almasri, and Raed Elmasri became the owners and operators of Americare Medical Service ("Americare"), a Houston company that provided ambulance transportation for Medicare and Medicaid dialysis patients to and from their dialysis treatments. In June 2006, Mazen Abdallah and Will Smith

purchased Americare from Fallah, Almasri, and Elmasri. Mazen Abdallah and Wesam Abdallah operated Americare after June 2006.

Medicare and Medicaid pay a portion of claims submitted by healthcare providers such as Americare for ambulance transport of dialysis patients, but only under certain conditions. The defendants are charged with conspiracy to violate 18 U.S.C. § 1347 by submitting fraudulent claims for the ambulance transport provided by Americare. Almasri, Elmasri, and the Abdallahs are also charged with violating 42 U.S.C. § 1320a-7b(b)(2)(A), the anti-kickback statute, by paying to obtain patients' agreement to use Americare for transport to and from dialysis treatments. In addition, Fallah, Almasri, Elmasri, and Mazen Abdallah are charged with conspiracy to launder funds under 18 U.S.C. § 1956(h).

On July 11, 2007, the government applied for a search warrant allowing it to seize evidence from Mazen Abdallah's home and Americare's office. A supporting affidavit from FBI Special Agent Christine Arciola accompanied the warrant application. The affidavit provided details about seven dialysis patients who had either received ambulance transport from Americare or had been solicited to use Americare ambulance services by one of the defendants or an Americare employee. The affidavit alleged that these patients did not qualify for ambulance transport under the Medicare regulations. The affidavit also provided information about the claims Americare had submitted to Medicare, how much Medicare had reimbursed Americare, and the results of a review of Americare's billing conducted by TrailBlazer Health Enterprises, a third-party contractor reviewing Medicare billings.

2

Mazen Abdallah and Wesam Abdallah moved to suppress the evidence seized from Mazen Abdallah's home and Americare's office on the grounds that the affidavit was misleading, did not show probable cause, and did not support an all-records search of Mazen Abdallah's home. This court found as follows:

- Wesam Abdallah had no standing to challenge the search of Mazen Abdallah's home.
- The affidavit did not mislead the magistrate judge about the results of the TrailBlazer review, the medical conditions of the patients Americare transported, the applicable Medicare standard for reimbursable ambulance transport, or whether evidence could be found at Mazen Abdallah's home.
- The evidence on which the affidavit was based was not stale or unreliable.
- The affidavit was sufficient to support probable cause.
- The search of Mazen Abdallah's home for all records relating to Americare, its employees, its finances, payments made for referral of patients to Americare, its relationships with billing companies, and other related documents was justified given the nature of the alleged offense and the overlap between Abdallah's business and personal lives.

Abdallah argues that this court erred in: finding that the affidavit was sufficient to support a finding of probable cause even though it failed to allege specific intent or knowledge; requiring Abdallah to show that evidence seized in the search of his home did not fall within the plain-view exception; finding that the affidavit provided the magistrate

judge with the proper legal standards; and in analyzing the materiality of the alleged misrepresentations or omissions in the affidavit. (Docket Entry No. 180). Abdallah also argues that because the affidavit failed to establish that the alleged perpetrators had the specific intent to commit fraud, this court erred in finding that an all-records search of Abdallah's home was justified. (Docket Entry No. 185). These arguments are addressed separately below.

**II.     Analysis**

    **A.     Specific Intent**

Abdallah relies on *Edgerly v. City and County of San Francisco*, 495 F.3d 645, 654 (9th Cir. 2007), for the proposition that an affidavit in support of a search warrant in a fraud case must show probable cause to find that an individual had the specific intent to commit fraud. *Edgerly* involved a challenge to a warrantless arrest. Abdallah challenges a search executed pursuant to a search warrant. Abdallah contends that the necessary showing for probable cause to support an arrest or a search, with or without a warrant, are the same. "It cannot be that officers may act on a warrant supported by less evidence of a crime than that which they would need in order to arrest or search without one." (Docket Entry No. 180 at 3).

Abdallah's argument "approaches requiring . . . proof sufficient to establish guilt in order to substantiate the existence of probable cause." *Brinegar v. United States*, 338 U.S. 160, 173 (1949). The Supreme Court has rejected this approach, noting that the "'quanta of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue

a warrant." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (citing *Brinegar*, 338 U.S. at 173)). "It is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Id.*

Abdallah's argument that probable cause to support a warrantless arrest requires the same quantum of proof as probable cause to support a search warrant is not persuasive. "[W]hile it is true that there is . . . common ground for discussing the quantum of evidence required under the Fourth Amendment's probable cause test, it does not follow that probable cause for arrest and probable cause to search are in all respects identical." 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.1(b) (4th ed. 2004). Probable cause to arrest exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (citing *Spiller v. Texas City*, 130 F.3d 162, 165 (5th Cir. 1997)). A probable-cause determination for the issuance of a search warrant is a "practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002) (quoting *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir.1994)); *see also Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) ("Probable cause [to support a search warrant] exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime.")

(citing *Gates*, 462 U.S. at 238–39). "In the case of arrest, the conclusion [that probable cause exists] concerns the guilt of the arrestee, whereas in the case of search warrants, the conclusions go to the connection of the items sought with the crime and to their present location." 2 LAFAVE, SEARCH AND SEIZURE § 3.1(b).

The Fifth Circuit has stated that an affidavit supporting a search warrant is sufficient to establish probable cause if the affidavit "make[s] it apparent . . . that there is some nexus between the items to be seized and the criminal activity being investigated." *Kohler*, 470 F.3d at 1109 (citing *Warden v. Hayden*, 387 U.S. 294, 302 (1967)). In analyzing the sufficiency of an affidavit supporting a search warrant, a court "start[s] with the general proposition that a search warrant, unlike an arrest warrant, may issue, without the slightest clue to the identity of the criminal, if there is probable cause to believe that the fruits, instrumentalities, or evidence of criminal activity are located at the place to be searched." *United States v. Webster*, 750 F.2d 307, 318 (5th Cir. 1984) (citing 1 LAFAVE, SEARCH AND SEIZURE § 2.1(b) (1978)). It is not necessary for an affidavit accompanying a search warrant to allege specific intent on the part of an alleged perpetrator to establish probable cause to search the location identified in the affidavit.

Abdallah cites no cases supporting his argument that an affidavit accompanying a search warrant must show specific intent to commit fraud. The Supreme Court has recognized that "[s]earch warrants are not directed at persons; they authorize the search of places and the seizure of things, and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily*, 436 U.S. 547,

555–56 (1978) (citing *United States v. Kahn*, 415 U.S. 143, 155 n.15 (1974)). Abdallah's first ground for reconsideration is denied.

### B. The Plain-View Doctrine and the Search of Abdallah's House

A list of individuals who allegedly received monthly payments for riding with Americare or referring dialysis patients to Americare was found in a box in Abdallah's home, along with financial records. Abdallah also argues that this court required him to show that this evidence seized from his home did not fall within the plain-view exception to the warrant requirement. Citing *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985), Abdallah argues that the government must show an exception to the general requirement of a search warrant, such as the plain-view doctrine, that justified seizing this evidence. (Docket Entry No. 180 at 4). Abdallah contends that the United States has not established that this list falls under the plain-view exception.

Abdallah's argument is not persuasive. Even if the challenged evidence does not fall within the plain-view exception, officers may seize property not specifically described in a warrant if there is a sufficient nexus between that property and the crime under investigation. *United States v. Loe*, 248 F.3d 449, 460–61 (5th Cir. 2001). In his motion for reconsideration, Abdallah does not challenge this court's finding that a sufficient nexus exists between evidence showing payments to dialysis patients and the crime under investigation in this case, a scheme to defraud Medicare by submitting false claims for ambulance transport. A search of financial records stored in Abdallah's home was justified based on the nature of the alleged crimes and the overlap between his personal and business lives. The

7

Fifth Circuit has upheld all-records searches when probable cause exists to believe that an entire business was a scheme to defraud or that all the records of a business are likely to constitute evidence.  A warrant authorizing the seizure of such records and describing them in generic terms is sufficient to meet the Fourth Amendment's particularity requirement. *Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986) (citations omitted).  The Fifth Circuit has also upheld all-records or financial-records searches of homes in cases involving business fraud alleged to be pervasive, in which the defendant's personal and business affairs and records overlap. *See United States v. Davis*, 226 F.3d 346, 352 (5th Cir. 2000); *United States v. Cherna*, 184 F.3d 403, 409 (5th Cir. 1999); *United States v. Humphrey*, 104 F.3d 65, 69 (5th Cir. 1997).

Abdallah attempts to distinguish *Williams*, *Davis*, and *Cherna* on the grounds that these cases required "specific, articulable facts showing that the business is simply a fraudulent scheme" and that this court erred in relying "instead on conclusory allegations in the Affidavit." (Docket Entry No. 185 at 3–4).  Abdallah also argues that the record does not show an overlap between his personal and business lives.  These arguments are not persuasive.

The affidavit alleged that "Americare Medical Service submitted numerous false claims to Medicare and Medicaid, and continues to submit false claims for ambulance transportation of dialysis patients." (Docket Entry No. 153, Ex. A, Part 2 at 11).  The affidavit supported this allegation with a TrailBlazer post-payment medical review of twenty claims submitted by Americare.  The review concluded that 100% of the claims "would have

8

been denied if they were reviewed prior to reimbursement." (*Id.*, Ex. A, Part 2 at 12). The affidavit also contained information about claims submitted by Americare on behalf of three other patients not considered in the TrailBlazer review. These claims stated that the patients were bed-confined and required transportation by stretcher. The affidavit presented evidence that the patients were ambulatory and could use other modes of transportation to and from their dialysis treatments. The affidavit also described three patients and a licensed vocational nurse who had been solicited by a defendant or an Americare employee either to ride with Americare or to refer other patients to Americare. The information provided in the affidavit established probable cause to believe that all Americare's records were likely to constitute evidence of fraud. The information provided in the affidavit also established probable cause to believe that some of these records were stored at Abdallah's home. The affidavit defined the scope of items to be searched to include Americare's business, employment, and financial records; Medicard and Medicaid claims and literature; "records relating to the referral of Medicare and Medicaid patients to Americare" and "records relating to payment made for the referral of Medicare and Medicaid patients to Americare"; computer equipment; audit and examination records, billing records, records for storage service, and correspondence with billing companies. (*Id*., Ex. A, Part 3 at 31–32). The list of patients who received monthly payments to ride with Americare was found in a box on the floor of Abdallah's home. Also in the box were invoices and receipts, gas logs and receipts, notes with money amounts, and bank documents. The warrant in this case authorized the seizure of broad categories of financial documents. The affidavit supported such breadth by establishing

9

probable cause to believe that there was pervasive fraud at Americare.  *See Davis*, 226 F.3d at 352.  There was no "discrepancy between the assertions in the affidavit and the scope of the warrant that would make it unreasonable for an officer to rely on the warrant." *Id.* (citing *Cherna*, 184 F.3d at 409–10).

A sufficient nexus exists between Abdallah's personal and professional financial records and the alleged crime to justify the broad search for records at his home.  The motion to reconsider the denial of the motion to suppress the list and other financial records seized at Abdallah's home is denied.

### C. The Applicable Standard for Reimbursable Ambulance Transport of Dialysis Patients

Abdallah argues that this court erred in finding that the affidavit did not mislead the magistrate judge as to the applicable Medicare standard for reimbursable ambulance transport of dialysis patients.  Abdallah relies on a report from the Office of Inspector General (OIG). This report found that ambulance transport was justified in cases "where beneficiaries were ambulatory or wheelchair capable but had other destabilizing conditions, such as low blood pressure after dialysis that may have required monitoring." (Docket Entry No. 169, Ex. A at 5).  Abdallah argues that the report "emphasizes that the gravamen [of the inquiry] is whether other forms of transportation are 'contraindicated' at the time ambulance service is needed." (Docket Entry No. 180 at 6).  Abdallah also cites a TrailBlazer Ambulance Manual to support his argument that a number of conditions "may qualify a patient for ambulance transportation" and that the affidavit misleadingly focused on only two conditions: whether

the patient was bed-confined or needed transportation by stretcher. (*Id.* at 7). Abdallah argues that because "the Government withheld information that showed that the Americare patients were eligible for ambulance transportation," the affidavit failed to support "probable cause that Americare transported patients who were not qualified beneficiaries." (*Id.* at 7).

It was not misleading for the affidavit to describe a need for transportation by stretcher and bed-confinement as two examples of the conditions that support qualified ambulance transport. The affidavit describes claims that Americare submitted for four patients. The reimbursement claims for each of these patients stated that the patient had end-stage renal disease and other or related conditions, "had to be transported by stretcher only," and "was bed-confined before and after the transport." (Docket Entry No. 153, Ex. A at 14, 15, 16, 18–19). Abdallah does not contend that the affidavit's summary of the claims for these patients omitted critical information about how those claims established the medical necessity of the ambulance transport. The claims Americare submitted did not state that the patients were ambulatory but had conditions that "contraindicated," or made "medically unadvisable," transport by car or bus. It was not unreasonable for the magistrate judge to find probable cause that the transport did not meet Medicare standards based on the information provided about the contents of the claims and the conditions of the patients.

Abdallah's reliance on the OIG report is also misplaced. The report, which reviewed 1,991 dialysis-related ambulance claims for patients with end-stage renal disease, found that "claims did not meet Medicare guidelines if there was no medical condition that confined the patient to bed and/or made travel by other than an ambulance unsafe." (*Id.*, Ex. A at 5). The

information provided by the affidavit is consistent with this finding. The information showed that the patients for whom Americare submitted claims—claims stating that the patients were bed-confined and required transportation by stretcher—were ambulatory and safely able to use other modes of transportation, including automobile and bus.

In addition, the Supreme Court has recognized that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity . . . have no proper place in this area." *Gates*, 462 U.S. at 235. The affidavit was not misleading in the statement of the applicable Medicare and Medicaid standards for qualified ambulance transport.

### D.     Materiality

Abdallah argues that this court "failed to take into consideration deficiencies in the Affidavit's probable cause showing when considering the materiality of the evidence Mr. Abdallah says the Government recklessly or intentionally falsified or omitted." (Docket Entry No. 180 at 8). Abdallah contends that this court should have considered that the affidavit failed to establish specific intent when examining the materiality of omitted information. Abdallah points to the failure to state in the affidavit that patients Gomez and Martinez needed oxygen on their way to dialysis and that a patient who needs oxygen may qualify for ambulance transport under the regulations, even if ambulatory and not bed-confined.

Abdallah has failed to show that there were misleading statements or omissions that were necessary to the magistrate judge's finding of probable cause. As noted above, it is not

necessary for an affidavit accompanying a search warrant application to establish that specific intent. In addition, the record fails to show that Gomez and Martinez needed oxygen on their way to dialysis treatments, as Abdallah argues. The FBI's record of an interview with Gomez does not state that she needed oxygen while being transported to dialysis. The interview record for Martinez states that "[o]ccasionally, Martinez needs oxygen while en route to the dialysis clinic. If she does not get it during the ride, she will receive oxygen at the clinic." (Docket Entry No. 153, Ex. D at 1). The affidavit's failure to include the details of Gomez's and Martinez's condition was not a material omission. Abdallah does not identify misleading statements or omissions material to finding probable cause under the standard set in *Franks v. Delaware*, 438 U.S. 154 (1978), and subsequent cases. If the statements to which Abdallah objected in his original motion to suppress were excluded and the statements that Abdallah argued were improperly omitted were included, the affidavit would support a finding of probable cause under *Franks*. Even with a more detailed and fuller disclosure of the patients' medical conditions, a "commonsense" reading of the affidavit reasonably showed that Americare submitted claims for transporting patients identified as bed-confined and not ambulatory, that the claims contained false information, and that the claims did not comply with the Medicare reimbursement requirements. *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

### III.   Conclusion

A magistrate judge's determination of probable cause "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236. "Courts should not invalidate warrants by

13

interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Id.* (quoting *Ventresca*, 380 U.S. at 109). In doubtful cases, a search warrant should be sustained. *United States v. Leon*, 468 U.S. 897, 914 (1984). Affidavits used to support a search warrant are presumed valid. *Franks*, 438 U.S. at 171. Abdallah has not made a substantial showing that allegations in the affidavit supporting the search warrant were deliberate falsehoods or made with a reckless disregard for the truth. *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002). Nor has Abdallah shown that the *Leon* good-faith exception does not apply or that the officers who executed the warrant did not reasonably rely on the warrant.

Abdallah's motion for reconsideration and supplemental motion for reconsideration are denied.

SIGNED on December 26, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge