**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. H-07-155 |
| | § | |
| MAZEN ABDALLAH, | § | |
| WESAM ABDALLAH. | § | |

**MEMORANDUM AND OPINION**

      This Medicare and Medicaid fraud case arose out of ambulance transportation of individuals to and from regularly scheduled, nonemergency dialysis treatments. The individuals transported all suffered from end-stage renal disease. The government alleged that Mazen and Wesam Abdallah, brothers who purchased and operated an ambulance service from the codefendants, committed fraud and conspiracy to defraud by submitting claims for payment by Medicare and Medicaid for regularly scheduled nonemergency ambulance transports to and from dialysis of patients whose medical conditions did not qualify them to receive this benefit. The government also alleged that Wesam Abdallah violated the statutory "antikickback" provisions prohibiting soliciting ambulance riders by paying them or someone else to obtain the business, and that Mazen Abdallah committed money laundering using the proceeds of the healthcare fraud.

      Two codefendants, Ayad Fallah and Murad Almasri, pleaded guilty to conspiracy to commit health care fraud. After a five-week trial in which the codefendants were among over forty witnesses, the jury convicted Mazen and Wesam Abdallah of conspiracy to defraud Medicare and Medicaid programs and to obtain money from Medicare and Medicaid

by false billing, in violation of 18 U.S.C. § 1347. The jury acquitted Mazen Abdallah of the substantive healthcare fraud counts and acquitted him of the money laundering charge. The jury convicted Wesam Abdallah of four substantive counts of healthcare fraud and one count of violating the antikickback statute. Both defendants moved for a judgment of acquittal or in the alternative for a new trial. They argued that the evidence was insufficient and that prosecutorial misconduct, *Brady* violations, and the court's erroneous legal rulings infected the trial. On April 29, 2009, this court issued a 102-page memorandum and opinion denying the defendants' motions for a judgment of acquittal or in the alternative for a new trial. (Docket Entry No. 489). This court then held several hearings and carefully considered the sentencing issues involved in this case. The Abdallahs remained on bond before the final sentencing hearing. On May 12, 2009, Mazen and Wesam Abdallah were sentenced to thirty-month terms of imprisonment each and were remanded to the custody of the Bureau of Prisons. (Docket Entry Nos. 502, 503). The defendants were ordered to pay restitution to Medicare and Medicaid, jointly and severally, in the total amount of $637,425.79. (*Id.*).

The Abdallahs have moved for release on bond pending appeal. (Docket Entry Nos. 526, 527). The government responded, (Docket Entry No. 531), and the Abdallahs replied, (Docket Entry No. 532). Based on a careful review of the motions, response, and reply; the record; and the applicable law, this court denies the Abdallahs' motions for release on bond pending appeal. The reasons are explained in detail below.[1]

---

[1] A detailed description of the facts is set out in this court's earlier rulings. *See United States v. Abdallah*, 2009 WL 1160963 (S.D. Tex. Apr. 29, 2009) (denying the defendants' motions for acquittal and new trial);

**I.     The Legal Standard**

Under the Bail Reform Act, an individual convicted of an offense and sentenced to a term of imprisonment will be detained unless the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal or a new trial. 18 U.S.C. § 3143(b). The Act creates a presumption against bail pending appeal because "the conviction is presumed correct and the burden is on the convicted defendant to overcome that presumption." *United States v. Valera-Elizondo*, 761 F.2d 1020, 1024 (5th Cir. 1985). The Fifth Circuit addressed this standard in *Valera-Elizondo*, listing four prerequisites a defendant must prove to obtain release on bond pending appeal:

>  (1)   that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
>  (2)   that the appeal is not for purpose of delay;
>
>  (3)   that the appeal raises a substantial question of law or fact; and
>
>  (4)   that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

---

*United States v. Abdallah*, 2007 WL 4570189 (S.D. Tex. Dec. 26, 2007) (denying the defendants' motion for reconsideration of the denial of their motion to suppress); *United States v. Abdallah*, 2007 WL 4334106 (S.D. Tex. Dec. 7, 2007) (denying the defendants' motion to suppress); *United States v. Abdallah*, 2007 WL 3256261 (S.D. Tex. Nov. 5, 2007) (denying the defendants' motion for severance).

*Id.* at 1025.

The Fifth Circuit elaborated on the meaning of "substantial question," finding that it "cannot be read as meaning . . . that the district court must conclude that its own order is likely to be reversed," but rather means the trial court has identified a "substantial issue" that "calls into serious question the correctness of the judgment of conviction." *Valera-Elizondo*, 761 F.2d at 1022 (adopting *United States v. Miller*, 753 F.2d 19, 23 (3rd Cir. 1985)). In the Fifth Circuit, a "substantial question" for purposes of release on bond pending appeal is an issue with "more substance than would be necessary to a finding that it was not frivolous," or a "'close' question or one that very well could be decided either way." *Id.* at 1024 (citing *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). "[T]he issue presented must raise a substantial doubt (not merely a fair doubt) as to the outcome of its resolution." *Id.* The issue can present a question that is either novel, i.e., one that has not been decided by controlling precedent, or a question that is "fairly doubtful." *See id.* at 1023 ("First, the court must determine that the question raised on appeal is substantial, that is to say a question that is either novel, which has not been decided by controlling precedent, *or* which is fairly doubtful.") (emphasis added) (citing *Miller*, 753 F.2d at 23). Although the absence of controlling precedent is a significant factor for a district court to consider in determining whether a question is "substantial," it is not the only factor. *Id.* Indeed, "there might be no precedent in [the Fifth Circuit], but there may also be no real reason to believe that this circuit would depart from unanimous resolution of the issue by other circuits." *Id.* (citing *Miller*, 753 F.2d at 23). It is not enough, however, that a defendant raises a substantial

4

question of law or fact; the substantial question must also be one that would "likely" result in a new trial or a judgment of acquittal if it were to be resolved in the defendant's favor on appeal. The inquiry is whether, "if error is found, it will so taint the conviction that it is more probable than not that reversal will be required." *Id.*

## II. Analysis

The government does not dispute that the Abdallahs meet the first two prongs of the *Valera-Elizondo* test. This court finds that the Abdallahs have presented sufficient evidence that they are not likely to flee or pose a danger to the safety of others. The Abdallahs remained on bond before sentencing, complied with the conditions of pretrial and presentencing release, and appeared for court proceedings. With this court's permission, they both traveled outside the district without incident. Neither has a violent criminal history. Given the numerous contested issues at trial and in the Abdallahs' motions for acquittal or new trial, this court finds that the appeal is not for the purpose of delay.

The Abdallahs argue that they have asserted substantial issues on appeal that are likely to result in their convictions being overturned or reversed. Some of the issues they raised were also asserted as the basis for their motions for acquittal or new trial: the sufficiency of the evidence; a material variance; a search warrant obtained by means of a HIPAA violation; a violation of Rule 615 of the Federal Rules of Evidence; the erroneous admission of expert testimony; and the limits on cross-examination. This court denied the Abdallahs' motions for acquittal or new trial on these grounds. The Abdallahs argue that a substantial issue is raised for appeal because "reasonable jurists" could find it "fairly debatable" whether the

evidence was sufficient to sustain the convictions; whether the proof at trial materially varied from the indictment; whether the evidence obtained from Mazen Abdallah's house should have been suppressed because the search warrant was obtained using the testimony of an FBI agent who violated HIPAA; whether the government's expert witness, Debra Patterson, should have been permitted to remain in the courtroom throughout trial; whether Christine Griffith's testimony was admissible as expert testimony; and whether the cross-examination of Patterson and Griffith was so limited as to violate the Abdallahs' Sixth Amendment right to confront witnesses.

The Abdallahs have not presented clear and convincing evidence that the issues raised on appeal present a substantial question of law or fact likely to result in their convictions being overturned or reversed. The standard in the Fifth Circuit is whether the issue presents a "'close' question or one that very well could be decided either way," not whether "reasonable jurists" would find it "fairly debatable."[2] The issue presented must raise a "substantial doubt" as to the outcome. The Abdallahs have not met their burden to show, by clear and convincing evidence, a substantial doubt as to the resolution of the issues they raise on appeal.

### A. Sufficiency of the Evidence

The Abdallahs challenge their convictions for conspiracy to bill Medicare and

---

[2] The cases cited by the Abdallahs for the "reasonable jurists" and "fairly debatable" standards are from the Third Circuit and Ninth Circuit. *See, e.g., United States v. Smith*, 793 F.2d 85, 88–89 (3d Cir. 1986), *cert. denied*, 479 U.S. 1031 (1987); *United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985).

Medicaid for ambulance transports for patients whom the Abdallahs "well knew" did not qualify. The Abdallahs argue that a substantial issue is presented for appeal because a "reasonable judge . . . could easily take the position that the record did not contain sufficient facts from which the jury could reasonably infer that either Abdallah, and Mazen Abdallah in particular, knew well that the Americare beneficiaries were ineligible." (Docket Entry No. 526, at 7). The Abdallahs contend that the evidence about recruiting Metro-Lift customers was insufficient to permit the jury to conclude that the Abdallahs knew Americare's patients did not qualify for the Medicare-reimbursed ambulance-transport benefits that Americare billed for and received under the Abdallahs' ownership and operation. The Abdallahs also contend that the evidence about false, forged, or photocopied CMNs was insufficient to permit the jury to conclude that the Abdallahs knew that Americare's patients did not qualify.[3] These arguments examine bits of the evidence in isolation and out of context, ignoring other record evidence, including the codefendants' testimony at trial. In deciding the sufficiency of the evidence, courts "consider the evidence *as a whole* taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom to determine whether a rational trier of fact could have found guilt beyond a

---

[3] The Abdallahs also argue that evidence as to the conditions of Ray Stevenson and Yolanda Vargas could not be used as evidence that Mazen Abdallah knew Americare patients did not qualify. This argument is inapposite. The Abdallahs were charged with conspiracy to commit Medicare fraud by billing for patients whom they knew did not qualify. The conspiracy charge was not based on any specific patient or patients and the absence of evidence as to Mazen Abdallah's knowledge about Stevenson or Vargas does not show that the evidence was insufficient for a jury to conclude that Mazen Abdallah knew that at least one or more Americare patients did not medically qualify. As stated in this court's memorandum and opinion denying the motions for new trial and acquittal, there was sufficient evidence for the jury to make such a conclusion.

7

reasonable doubt." *United States v. Turner*, 960 F.2d 461, 465 (5th Cir.1992) (emphasis added). The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence. *See United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008). This court conducted an exhaustive analysis of the record evidence and concluded that the evidence, while circumstantial as to Mazen Abdallah, allowed the jury to reasonably conclude that both Mazen and Wesam Abdallah knew that many of the beneficiaries Americare was transporting did not qualify for Medicare-reimbursed ambulance transport. *See United States v. Abdallah*, 2009 WL 1160963 (S.D. Tex. Apr. 29, 2009). The Abdallahs have failed to show that the sufficiency of the evidence issue was a "close" call or that a "substantial doubt" exists about its resolution on appeal. Release on bond pending appeal is not warranted on this basis.

### B. Material Variance

A material variance occurs "when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense." *United States v. Delgado*, 401 F.3d 290, 295 (5th Cir. 2005). A variance requires reversal only if it prejudiced the defendant's substantial rights. *Id.*

The indictment in this case alleged that "[i]t was [the] object of the conspiracy that defendants unlawfully enriched themselves by false and fraudulently representing the conditions of Medicare and Medicaid beneficiaries in order to bill Medicare and Medicaid

for transport by ambulance to regularly scheduled non-emergency dialysis treatments, when in fact defendants well knew that the beneficiaries did not qualify for these transports." (Docket Entry No. 126). The Abdallahs argue that a variance occurred because the indictment charged a single conspiracy and the evidence at trial showed "two different and disconnected smaller conspiracies." (Docket Entry No. 526, at 16). The Abdallahs contend that the central allegation against the codefendants, Ayad Fallah and Murad Almasri, was that they "billed for services that were not rendered when they transported beneficiaries on some occasions by private car but charged Medicare for ambulance transportation." (*Id.*, at 16–17). By contrast, the Abdallahs assert that the "central allegation" against them was that they obtained false CMNs for patients who did not qualify and then billed Medicare for those patients. The Abdallahs argue that the evidence showed two separate conspiracies because they did not bill for services not rendered and the codefendants did not obtain false CMNs.

Whether the evidence establishes the existence of one conspiracy or multiple conspiracies is a fact question for the jury. *United States v. Morrow*, 177 F.3d 272, 291 (5th Cir. 1999) (per curiam) (citation omitted). The jury's finding that the government proved a single conspiracy must be upheld "unless the evidence and all reasonable inferences, examined in the light most favorable to the government, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt." *United States v. Morris,* 46 F.3d 410, 415 (5th Cir. 1995) (quotation omitted). Even if the evidence points to multiple conspiracies rather than a single conspiracy charged in the indictment, the variance does not affect the defendant's substantial rights as long as the government establishes the defendant's

9

involvement in at least one of the proved conspiracies. *Morrow*, 177 F.3d at 291. "The principal considerations in counting the number of conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *Id.* (citation omitted).

In the Fifth Circuit, the criterion of a common goal is defined broadly in counting the number of conspiracies. *See id.*; *Morris*, 46 F.3d at 415 ("In fact, one panel has remarked that 'given these broad "common goals" the common objective test may have become a mere matter of semantics.'") (quotation omitted). The jury in this case could reasonably have concluded that the common goal of the charged conspiracy was to derive personal gain by billing Medicare for ambulance service for patients whose medical conditions did not qualify them for the benefit.

Under the second prong, "[i]f [an] agreement contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up, then such agreement constitutes a single conspiracy." *Morris*, 46 F.3d at 415–16 (quoting *United States v. Perez*, 489 F.3d 51, 62 (5th Cir. 1973)). "[T]he existence of a single conspiracy will be inferred where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture, where there are several parts inherent in a larger common plan." *Morris*, 46 F.3d at 416 (citing *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982)). The evidence in this case allowed the jury to find an agreement to bill Medicare for ambulance transport for patients who were not medically eligible for such transport. The

codefendants' activities in building up the business of Americare and in teaching the Abdallahs how to recruit patients and operate the business before the sale was necessary or at least advantageous to the Abdallahs' continued operation of Americare for the purpose of billing Medicare for medically ineligible patients.

The third prong "examines the interrelationships among the various participants in the conspiracy. The more interconnected the various relationships are, the more likely there is a single conspiracy." *Morris*, 46 F.3d at 416. But "there is no requirement that every member must participate in every transaction to find a single conspiracy. Parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy." *Id.* The evidence showed significant overlap and interaction between the codefendants and the Abdallahs. Mazen Abdallah became interested in operating an ambulance business like Americare after speaking with Ayad Fallah. The Abdallahs made an arrangement with Raed Elmasri, their first cousin, that let them learn the business while waiting to obtain the necessary licenses and documentation to start their own ambulance transport business. Raed Elmasri offered the Abdallahs 25% of the amounts paid by Medicare for patients they recruited to Americare during this period. Murad Almasri taught the Abdallahs how to recruit patients from Metrolift manifests and other ambulance services, and how to pay patients to switch from whatever transport they were using – including MetroLift buses or private cars – to ride Americare ambulances to their regular dialysis appointments. The Abdallahs successfully recruited their "own" patients before purchasing Americare and operating it themselves. Fallah introduced Mazen Abdallah to

Kelvin Washington and ensured that the payments to Washington for having dialysis patients at SLNH ride Americare ambulances to and from dialysis continued. Fallah stayed at Americare for two weeks after the Abdallahs purchased the business and showed the Abdallahs how to operate it. Fallah told Mazen Abdallah about "easy" doctors and how they were used when a patient's primary physician refused to sign a certificate of medical necessity that the patient qualified under Medicare for the ambulance transport. The evidence was sufficient to allow the jury to find a single conspiracy.

Even assuming that a variance occurred, the Abdallahs have failed to raise an issue as to whether it prejudiced their substantial rights. "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." *Berger v. United States*, 295 U.S. 78, 82 (1935). The most common prejudice to a substantial right caused by a variance in a conspiracy trial is the transference of guilt from one codefendant to another. *Morris*, 46 F.3d at 417. "[W]here the indictment alleges a single conspiracy and the evidence established each defendant's participation in at least one conspiracy a defendant's substantial rights are affected only if the defendant can establish reversible error under general principles of joinder and severance." *Id.* (quoting *United States v. Jensen*, 41 F.3d 946, 956 (5th Cir. 1994)). The Abdallahs have not demonstrated error under the rules of joinder and severance. This court denied the Abdallahs' pretrial motion to sever, finding that joinder was not improper and that no unfair prejudice would occur. The defendants met the requirements for joinder because they were "alleged to have participated in the same act or transaction, or in

12

the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8.  Although Fallah, Almasri, and Elmasri were responsible for setting up Americare and operating it initially, the superseding indictment alleged the Abdallahs' involvement in the business before and after they purchased the company.  *See United States v. Abdallah*, 2007 WL 3256261 (S.D. Tex. Nov. 5, 2007) (denying the defendants' motion for severance). Moreover, any risk of prejudice was minimized by this court's instruction to the jury as follows:

> A separate crime is charged against one or both of the defendants in each count of the indictment.  Each count, and the evidence pertaining to it, should be considered separately.  The case of each defendant should be considered separately and individually.  The fact that you may find one or both of the defendants guilty or not guilty of any of the crimes charged should not control your verdict as to any other crime or the other defendant.  You must give separate consideration to the evidence as to each defendant.

(Docket Entry No. 325, at 10).  The Abdallahs have failed to show by clear and convincing evidence that a substantial issue is raised on appeal as to the alleged material variance.

### C.     **HIPAA violation and *Franks v. Delaware* claim**

The alleged HIPAA violation does not raise a substantial issue to warrant the Abdallahs' release on bond pending appeal.  In moving to suppress evidence before trial and in moving for acquittal or new trial, the Abdallahs argued that dismissal or suppression was appropriate because government agents investigating possible fraud in Americare's Medicare billings violated the criminal provisions of the Health Insurance Portability and Accountability Act ("HIPAA), 42 U.S.C. § 1320(d).  HIPAA prohibits a "covered entity"

13

from receiving and using protected health information. 45 C.F.R. § 164.502(a). The Abdallahs argued that Ayman Fares, a paid confidential informant, "stole" run sheets from Americare and gave them to FBI Agent Arciola. The Abdallahs asserted that Arciola violated HIPAA because she did not report Fares's crime but instead used the run sheets to further the criminal investigation into Americare. The Abdallahs asserted that Arciola "failed to inform the magistrate that she relied on stolen evidence and covered up the crime" and that "probable cause was dependent in part on information provided by a paid informant." (Docket Entry No. 349, at 48). This court rejected these arguments, relying on cases holding that the FBI and other law enforcement agencies are not covered entities under HIPAA. *See United States v. Mathis*, 377 F. Supp. 2d 640, 645 (M.D. Tenn. 2005) ("HIPAA applies to 'a health plan,' 'a healthcare clearinghouse,' or 'a healthcare provider who transmits any health information in an electronic form in connection with a transaction referred to in Section 1320d-2(a)(1) of this title.' The FBI does not fit within any of these categories."); *see also State v. Straehler*, 745 N.W.2d 431, 435 (Wis. App. 2007) (police officer is not a "covered entity" under HIPAA); *State v. Downs*, 923 So.2d 726, 731 (La. Ct. App. 2005) (district attorney is not a "covered entity" under HIPAA). The Abdallahs again reassert these arguments and claim that the questions raised are novel and not governed by controlling precedent because there is only one federal district court case dealing with whether law enforcement is a covered entity under HIPAA. The fact that there is no controlling precedent on this question does not make it a substantial issue. The statutory language is clear that HIPAA only applies to "a health plan," "a healthcare clearinghouse," or "a healthcare

14

provider who transmits any health information in an electronic form in connection with a transaction referred to in Section 1320d-2(a)(1) of this title." Courts have considered whether various government entities are "covered" entities bound by HIPAA's restrictions on use and disclosure of health information. *See*, *e.g.*, *Beard v. City of Chicago*, 2005 WL 66074 at *2 (N.D. Ill. Jan. 10, 2005) (holding that city fire department is not a "covered entity" under HIPAA). The alleged HIPAA violation does not provide a basis for granting release on bond pending appeal.

The Abdallahs also argue that the issue is not only whether HIPAA was violated, but "whether the Special Agent violated FBI and DOJ rules, and whether she misprisoned the felonies of her paid confidential informant." (Docket Entry No. 532, at 11). The Abdallahs assert that the Department of Justice has prosecuted noncovered entities for receiving and using protected health information. The Abdallahs rely on a memorandum from the DOJ's Office of Legal Counsel to the General Counsel for the Department of Health and Human Services stating that "[t]he liability of persons for conduct that may not be prosecuted directly under section 1320d-6 will be determined by principles of aiding and abetting liability and of conspiracy liability." *See* SCOPE OF CRIMINAL ENFORCEMENT UNDER 42 U.S.C. § 1320d-6 (June 1, 2005) at http://www.usdoj.gov/olc/hipaa_final.htm. The Abdallahs argue that evidence of the HIPAA violation and Agent Arciola's "misprision" of Fares's "crime" "undercuts the integrity of the investigation, rebuts the presumption of reliability, and makes failure to inform the Magistrate of the Special Agent's digressions material omissions under *Franks*." (*Id.*).

The Abdallah's argument is unpersuasive. An affidavit used to support a search warrant is presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *Mason v. Lowndes County Sheriff's Dept.*, 106 Fed. App'x 203, 206 (5th Cir. 2004). An affidavit may be attacked by showing deliberate falsehood or reckless disregard for the truth by the affiant. *Franks*, 438 U.S. at 154. To meet this burden, the challenger must make a substantial showing that (1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) after the false statement are removed or the improper omissions added, the affidavit is not sufficient to support a finding of probable cause. *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002) (citing *United States v. Dickey*, 102 F.3d 157, 161–62 (5th Cir. 1996)). The defendant bears the burden of showing, by a preponderance of the evidence, that a false statement was made intentionally or recklessly. *Id.* (citing *United States v. Runyan*, 290 F.3d 223, 234 n.6 (5th Cir. 2002)).

There is no evidence to support the defendants' argument that the statements in Agent Arciola's affidavit were deliberate falsehoods or made with reckless disregard for the truth. There is no evidence that the confidential informant, Ayman Fares, violated HIPAA's criminal provisions on receiving or using protected health information. The DOJ has prosecuted individuals who are not covered entities for unlawfully receiving or using protected health information, but these individuals were held liable under principles of aiding and abetting a *covered entity* or as part of a conspiracy with a *covered entity*. The DOJ memorandum the Abdallahs rely on states that prosecution of a noncovered entity occurs when "an individual who is not a covered entity . . . aids or conspires *with a covered entity*

16

in the use of protected health information in a manner not authorized by the regulations." SCOPE OF CRIMINAL ENFORCEMENT UNDER 42 U.S.C. § 1320d-6 (June 1, 2005) (emphasis added), at http://www.usdoj.gov/olc/hipaa_final.htm. The Abdallahs do not allege, and the record provides no basis to find, that Fares aided and abetted the violation of HIPAA by a covered entity or that Fares conspired with a covered entity to unlawfully use protected health information. Because the confidential informant did not commit a crime in obtaining medical records and giving them to Agent Arciola, there was no falsehood or material omission in the affidavit used to obtain the warrant to search Mazen Abdallah's home. The Abdallahs have failed to raise a substantial issue for appeal relating to the affidavit or the search warrant.

### D. The Government's Witnesses

The arguments relating to Patterson and Griffith do not raise a substantial issue for purposes of release on bond pending appeal. The Abdallahs argue that this court erred: by allowing the government's expert witness, Debra Patterson, to remain in the courtroom during trial; by allowing Christine Griffith to testify as an expert witness; and by limiting the Abdallahs' cross-examination of Patterson and Griffith. This court addressed each of these arguments in detail in the April 29, 2009 memorandum and opinion denying the motions for acquittal or new trial. *See United States v. Abdallah*, 2009 WL 1160963 (S.D. Tex. Apr. 29, 2009). The Abdallahs have failed to show by clear and convincing evidence that these decisions were a "close" call or that a substantial doubt exists as to their resolution on appeal. The motion is denied.

## III.     Conclusion

It is not likely that Mazen or Wesam Abdallah will flee or pose a danger to the safety of the community if they are released pending appeal. The Abdallahs are not pursuing this appeal solely for the purpose of delay. The Abdallahs, however, have failed to establish that their appeal raises a substantial question of law or fact that, if decided in their favor, would likely result in reversal. The motions for release on bond pending appeal are denied.

SIGNED on July 1, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge